L SULLIVAN, Judge.
The trial court granted an exception of no right of action dismissing Otis Wiley as a Plaintiff in a medical malpractice action arising from his ex-wife’s reaction to a drug administered during surgery, after finding that Mr. Wiley transferred all of his interest in that suit, including his loss of consortium claim, to his former spouse in their community property partition. For the following reasons, we affirm.
Facts and Procedural History
On April 19, 2002, Elizabeth and Otis Wiley filed suit against Dr. Larry Myers; Beverly Antony, a nurse anesthetist; and Rapides Health Care System d/b/a Rap-ides Regional Medical Center, alleging that Mrs. Wiley sustained neurological damage from the improper administration of the drug Anzemet during surgery on November 17, 2000. The petition also alleged that Plaintiffs sustained damages for “[p]ast and future loss of consortium, services, nurturing and society.”
On June 3, 2002, Ms. Antony filed an exception of no right of action as to Mr. Wiley, alleging that he transferred all of his interest in the medical malpractice action to Mrs. Wiley in their community property partition that was incorporated into a judgment of April 19, 2001. Attached to the exception was a copy of the community property partition agreement, which provided:
ELIZABETH SANDERS WILEY hereby receives and OTIS W. WILEY, hereby grants, bargains, transfers, sells, conveys and delivers unto her, with full guaranty of title and complete transfer, *754 all of her [sic] right, title and interest in and to the following described property:
4. All interest in the law suit of Elizabeth Sanders Whey versus Rapides Regional Medical Center;....
Elsewhere in the agreement, the parties acknowledged two items of Mr. Wiley’s separate property: a $65,000.00 certificate of deposit and a $12,000.001 ?down payment made on a truck that Mr. Wiley received in the partition. The agreement further provided: “Both of the parties hereto do hereby assert that this partition constitutes a transaction and compromise of their respective claims, rights, and obligations under the provisions of Article 3071, et seq., of the Louisiana Civil Code, as amended.”
In opposition to the exception, Mr. Wiley filed his own affidavit, in which he stated that he “at no time entered or did in fact release or convey any rights he possesses against defendants for his loss of consortium damages which are his separate property and thus not subject to community property partitions.”
At the hearing on the exception, the trial court stated that it considered Mr. Wiley’s affidavit to be self-serving. The trial court granted the exception based upon Mr. Wi-. ley’s failure to reserve the consortium claim as his separate property after transferring “all” of his interest in the medical malpractice suit to Mrs. Wiley.
Opinion
In Mississippi Land Co. v. S & A Properties II, Inc., 01-1623, pp. 2-3 (La.App. 3 Cir. 5/8/02), 817 So.2d 1200, 1202-03 (citations omitted), we explained the purpose of an exception of no cause of action, as well as the standard for reviewing a trial court’s decision to grant or deny one, as follows:
Under La.Code Civ.P. art 927, a defendant may raise the peremptory exception of no right of action. An exception of no right of action has the function of determining whether the plaintiff has any interest in the judicially enforced right asserted. The function of this exception is to terminate the suit brought by one who has no judicial right to enforce the right asserted in the lawsuit. The determination of whether a plaintiff has a right of action is a question of law. Accordingly, we review exceptions of no right of action de novo.
h3n their community property partition, Mr. and Mrs. Wiley stated that their agreement was a transaction and compromise under La.Civ.Code arts. 3071-83. Article 3071 provides in part:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
In Brown v. Drillers, Inc., 93-1019, pp. 7-9 (La.1/14/94), 630 So.2d 741, 748-49 (citations omitted) (footnotes omitted), the supreme court reviewed the law pertaining to the interpretation of a disputed compromise as follows:
Shifting back to the codal provisions, LSA-C.C. Art. 3071 further provides that a compromise is a written contract. It follows that the compromise instrument is the law between the parties and must be interpreted according to the parties’ true intent. It also follows that the compromise instrument is governed by the same general rules of construction applicable to contracts.
LSA-C.C. Art.2046 sets forth a general rule of construction, providing that “[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may *755 be made in search of the parties’ intent.” The underscored word “further” in this article signifies the true nature of contractual interpretation. The determination that the language contained in a contract is clear and explicit, in itself, involves an interpretive process. For that reason, LSA-C.C. Art.2046 emphasizes that the process involves no further interpretation, as opposed to no interpretation at all.
LSA-C.C. Art. 3078 contains a supplementary rule of construction governing the interpretation of the operative language, and the determination of the scope, of a compromise agreement. LSA-C.C. Art. 3073 provides that a compromise agreement extends only to those matters that the parties expressly intended to settle and that the scope of the transaction cannot be extended by implication. More precisely, LSA-C.C. Art. 3073 set[s] forth the following four factors to be considered in determining the scope of a compromise instrument:
Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties,
whether it be explained in a general or particular manner,
unless it be the necessary consequence of what is expressed; and
they do not extend to differences which the parties never intended to include in them.
The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument. Louisiana courts, however, have crafted a special exception to the extrinsic evidence rule for compromise agreements based on an in pari materia reading of LSA-C.C. Art. 3073’s provision that a compromise extends only to those differences the parties’ clearly comprehended and LSA-C.C. Art. 3079’s provision that an error as to the subject matter in dispute is a ground to rescind a compromise.
Louisiana courts, however, have tempered that jurisprudential rule, recognizing that absent some substantiating evidence of mistaken intent, no reason exists to look beyond the four corners of the instrument to ascertain intent. Utilizing a case-by-case, factual analysis, Louisiana courts have limited the rule’s application to cases in which substantiating evidence is presented establishing either (1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim. When the factual circumstances surrounding the execution of the release instrument do not fall within either of the above categories, Louisiana courts, applying LSA-C.C. Art.2046’s general rule of construction, have not hesitated to confine their analysis to the four comers of the instrument.
In Brown, the issue presented was whether a pre-death release executed by a husband and wife settling all claims for the husband’s personal injuries included the wife’s subsequent wrongful death claim, where the release did not expressly refer to the husband’s death as a possible consequence of the accident. In allowing the wife to proceed with her wrongful death claim, the supreme court considered that the | .^release did not reference a wrongful death claim and that the tort victims’s *756 personal injury claim and his survivor’s wrongful death claim were “legally separate and distinct actions,” although they arose from the same tortious conduct. Id. at 751.
In McCall v. Cameron Offshore Boats, Inc., 93-787 (La.App. 3 Cir. 3/9/94), 635 So.2d 263, this court concluded that a release executed by the wife in a divorce action in favor of her husband did not bar her personal injury claim against her husband’s closely-held corporation arising out of an accident that occurred while she was driving a vehicle owned by the corporation. Even though the release provided that she discharged “any and all claims and demands of every kind and character whatsoever ... against HENRY ALBERT MCCALL, JR., his predecessors, affiliates, insurers, representatives, agents, successors, assigns and employees,” we found that the release, when read in full, clearly settled only those claims arising from the divorce. Id. at 265. In particular, we noted that the compromise was silent as to any claims against the husband’s corporation for the wife’s injuries in the automobile accident.
In LeBouef v. Gross, 506 So.2d 879 (La.App. 1 Cir.1987), however, the court concluded that the wife’s pre-trial release of her personal injury claims, in which she reserved only the husband’s claims for his injuries, precluded any award for her consortium damages at trial. The court stated:
The cause of action for loss of consortium is granted to specific relations of an injured person, in this case the spouse. The damages are separate and distinct from those of the injured person. However, we find that Mrs. LeBouef settled all of her claims. The settlement agreement reserved only Mr. LeBouefs claims for his personal injuries. The agreement did not limit Mrs. LeBouef s settlement claims solely to her own physical injuries. Consequently, Mrs. LeBouefs claim for loss of consortium was settled prior to trial.
Id. at 881 (emphasis added).
hAt issue in the present case is whether Mr. Wiley’s transfer of “all [his] interest” in Mrs. Whey’s medical malpractice action included his loss of consortium claim. Mr. Wiley argues that, because the transfer was executed in the compromise of an action to partition community property, it could not have included his loss of consortium claim, which was his separate property. We disagree. The agreement clearly states that Mr. Whey is transferring “all” of his interest in the medical malpractice action to his former spouse; it does not reserve any of that interest to him. Additionally, elsewhere in the agreement, the parties specifically listed two other items of Mr. Whey’s separate property, but that list did not include his loss of consortium action. Under these circumstances, we find that the analysis in LeBouef provides guidance in resolving this dispute. Accordingly, we agree with the trial court that, because Mr. Whey did not reserve his loss of consortium claim, he is no longer the proper party to prosecute that action.
Decree
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Appellant, Otis Wiley.
AFFIRMED.